UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) | NO. CR-05-2078-WFN |
| Plaintiff, | ) ) | |
| -vs- | ) ) | ORDER GRANTING DEFENDANT'S MOTION TO |
| JOSE MOJICA-LINOS, | ) ) | DISMISS INDICTMENT |
| Defendant. | ) ) ) | |

Pending Before the Court is the Defendant's Motion to Dismiss the Indictment (Ct. Rec. 23). The Court heard oral argument on October 25, 2005. Defendant was present and represented by Kurt Rowland; Assistant United States Attorney Shawn Anderson represented the Government. For the reasons discussed below, the Court grants the Defendant's motion.

## I. BACKGROUND

The Defendant initially entered the United States as a young man. On October 20, 1988 he applied for and received temporary residency. The Defendant was granted the status of a lawful permanent resident on December 1, 1990; however, in 1993, he was convicted of vehicular homicide and sentenced to 27 months imprisonment. A review of the documentation pertaining to the vehicular homicide conviction reveals that the Defendant was charged in the alternative under RCW 49.61.520(1)(a) **&** (b), which together provide:

> When the death of any person ensues within three years as a proximate result of injury proximately caused by the driving of any vehicle by any person, the driver is guilty of vehicular homicide if the driver was operating a motor vehicle: (a) While under the influence of intoxicating liquor or any drug, as defined by RCW 46.61.502; **or** (b) In a reckless manner . . . .

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS INDICTMENT - 1

1    R.C.W. 49.61.520(1)(a)-(b) (emphasis added).

2        The Defendant's Judgment and Sentence references both subsections and the

3    Statement of Defendant on Plea of Guilty does not qualify whether the conviction was

4    under subsection (a) or (b).  Nevertheless, the facts support that the conviction was likely

5    under (a), which criminalizes a death which results from driving while under the influence of

6    alcohol.[1]

7        On or about April 11, 2001, the INS served the Defendant with a Notice to Appear for

8    deportation proceedings.  On May 22, 2001, the Immigration Judge ("IJ") determined that the

9    Defendant was removable because he had been convicted of vehicular homicide, which the

10   IJ classified as an aggravated felony under the immigration laws.  The IJ also informed the

11   Defendant that he was not eligible for relief under § 212(c) of the immigration law because

12   he had not accrued seven years of lawful domicile prior to his conviction for vehicular

13   homicide.  The Defendant was deported on July 20, 2001.

14       The Defendant attacks the validity of his deportation on two bases: (1) the IJ erred by

15   informing him that he was ineligible for § 212(c) relief because under established Ninth

16   Circuit law, the time period of lawful domicile runs from the date of application for temporary

17   residency to the date the INS serves the Notice to Appear; and (2) his conviction for vehicular

18   homicide does not constitute an aggravated felony under either the categorical or modified

19   categorical approach.

20

21

22       [1]The Defendant's statement was as follows: "On or about the 4th of February, 1993 in

23   Adams County, Washington, at the corner of SR 24 and Bench road I did not see the stop

24   sign, drove into the intersection and the car I was driving collided with another car.  As a

25   result of the collision Socorro C. Soto died.  At the time I was under the influence of alcohol,

26   Blood Alcohol  .16."

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS INDICTMENT - 2

## II. ANALYSIS

**A.  Standard for Collateral Attack of Underlying Deportation.**  "In a criminal prosecution under § 1326, the Due Process Clause of the Fifth Amendment requires a meaningful opportunity for judicial review of the underlying deportation." *United States v. Zarate-Martinez*, 133 F.3d 1194, 1197 (9th Cir. 1998), *overruled on other grounds by United States v. Corona-Sanchez*, 291 F.3d 1201 (9th Cir. 2002) (en banc).  "If the defendant's deportation proceedings fail to provide this opportunity, the validity of the deportation may be collaterally attacked in the criminal proceeding." *Id.*  In order to succeed on such a collateral attack, the Defendant must demonstrate: "(1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *Id.*  The prejudice prong is satisfied when the alien demonstrates "plausible grounds for relief which might have been available to him but for the deprivation of rights." *Id.* at 1198 (citation omitted).

Prior to attacking the validity of the deportation in the § 1326 criminal proceedings, the statute requires the alien to first exhaust any available administrative remedies. *See* 8 U.S.C. § 1326(d).  However, the Ninth Circuit has excused exhaustion for a defendant who waives his right to appeal from the deportation order without having first been informed of what relief may be available. *United States v. Muro-Inclan*, 249 F.3d 1180, 1884 (9th Cir. 2001); *see also United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004)(opining that the exhaustion requirement of § 1326(d) cannot bar collateral review of a deportation proceeding when the waiver of appeal did not comport with due process).  The Government concedes that administrative exhaustion is not required in this case under the current Ninth Circuit law, but raises the issue in order to preserve it for appeal.

**B.  Section 212(c) Relief.**

**(1)  Defect in the Proceeding.**  "Where the record contains an inference that the petitioner is eligible for relief following deportation, the [Immigration Judge] must advise the

1   alien of this possibility and give him the opportunity to develop the issue." *United States v.*
2   *Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000)(citation omitted).    This requirement is
3   "mandatory." *Id.*  Advising an alien that he may be eligible for relief under § 212(c) of the
4   immigration laws is one such requirement. *Ubaldo-Figueroa*, 364 F.3d at 1048-49.

5              Section 212(c) of the Immigration and Naturalization Act, formerly codified
6   at 8 U.S.C. § 1182(c), provided that: "Aliens lawfully admitted for permanent residence who
7   temporarily proceeded abroad voluntarily and not under an order of deportation, and who are
8   returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted
9   in the discretion of the Attorney General without regard to the provision of subsection (a)
10  [classes of excludable aliens]." *Ortega de Robles v. INS*, 58 F.3d 1355, 1358 (9th Cir. 1995).
11  Therefore, an alien applying for relief under section 212(c) must demonstrate that he is a
12  lawful permanent resident, and that he has maintained a "lawful unrelinquished domicile" in
13  the United States for a period of seven consecutive years.

14             Lawful domicile is established for purposes of 212(c) relief when the alien
15  applies for amnesty. *Ortega de Robles v.* INS, 58 F.3d 1355, 1360-61 (9th Cir.1995); *United*
16  *States v. Jimenez-Marmolejo*, 104 F.3d 1083, 1086 (9th Cir. 1996).  In determining when the
17  period of lawful domicile terminates, the earliest date which would control is when the INS
18  commenced deportation proceedings. *See Avila-Murrieta v. INS*, 762 F.2d 733, 735 (9th
19  Cir.1985); *MartiXiques v. INS*, 741 F.2d 350, 355 (11th Cir.1984); *Lok v. INS*, 681 F.2d 107,
20  110 (2d Cir.1982).

21             The Defendant was granted temporary residence on October 20, 1988.  His
22  status was adjusted to legal permanent resident on December 1, 1990.  The date the INS
23  commenced deportation proceedings in this matter was April 17, 2001. Therefore, at the time
24  of the Defendant's deportation hearing in 2001, he had accrued approximately 12 years of
25  lawful domicile.  Although the Government argued at the motion hearing that the IJ was
26  correct in assuming that the period of lawful domicile ended when the Defendant was

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS INDICTMENT - 4

1    *convicted* in state court in 1993, it offers no authority for this position. The IJ therefore erred

2    when he advised the Defendant that he would not be eligible for 212(c) relief because he did

3    not have the requisite period of lawful domicile. *See* Defendant's Memorandum in Support

4    of Motion to Dismiss, Exhibit D.

5            Notwithstanding, there were certain classes of aliens who could not obtain

6    212(c) relief even if they had the requisite period of lawful residency. At the time of the

7    Defendant's state conviction for vehicular homicide, section 212(c) relief was unavailable to

8    an alien convicted of an aggravated felony if the alien served a term of imprisonment of at

9    least 5 years for the conviction. *See INS v. St. Cyr*, 533 U.S. 289, 297 (2001). In 1996,

10   however, Congress expanded upon the list of criminal convictions which would prohibit §

11   212(c) relief. Included in this expansion was any "aggravated felony" as defined under the

12   immigration laws. *Id.*

13           Despite this change in the law, the Supreme Court has held that aliens who

14   relied upon the existence § 212(c) in pleading guilty remain entitled to its protections even

15   after its elimination. *St. Cyr*, at 295-96. The Government contends that this Court cannot

16   retroactively apply the reasoning of *INS v. St. Cyr* (decided on June 25, 2001) to the

17   Defendant's May 22, 2001 deportation hearing.[2] This argument, however, is misplaced.

18           The case cited by the Government in support of its "no retroactivity" argument

19   is *Alvarenga-Villalobos v. Ashcroft*, 271 F.3d 1169 (9th Cir. 2001), which is a **habeas** case.

20   That case is distinguishable because the Defendant in the matter *sub judice* is not mounting

21   a collateral attack in a habeas proceeding; rather, he is attacking his underlying deportation

22

23           [2]The IJ in this matter actually refers to the fact that *St. Cyr.* was pending in the Supreme

24   Court. *See* Oral Decision of Immigration Judge ("[E]ven if the Supreme Court would agree

25   with the Second Circuit's decision [in St. Cyr.], the respondent clearly would not have been

26   eligible for 212(c) relief given the time sequence noted above.").

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS INDICTMENT - 5

1   in his primary § 1326 criminal proceeding. *See United States v. Ubaldo-Figueroa*, 364 F.3d

2   1042 (9th Cir. 2004)(applying the reasoning of *St. Cyr.* to a motion to dismiss **§** 1326 charges

3   where the alien's underlying deportation hearing took place on March 31, 1998).

4            The *Ubaldo-Figueroa* decision also precludes the Government's argument that

5   the Defendant needed to be eligible for 212(c) relief <u>at the time of his state court plea</u>.

6   *Ubaldo-Figueroa*, at 1050 ("In *Leon-Paz*, we held that aliens like Ubaldo-Figueroa are

7   entitled to § 212(c) relief even though they were not eligible for such relief <u>when they pled</u>

8   <u>guilty</u> to their crimes--crimes which were later reclassified as aggravated felonies pursuant

9   to IIRIRA § 321.")(emphasis added). As argued by the Defendant, the proper inquiry is

10  whether he was eligible for § 212(c) relief at the time of his deportation hearing. He was, and

11  the IJ's misinformation on the issue of § 212(c) relief was error.[3]

12           (**2**)   **Prejudice.**  Having determined that the IJ's error constitutes a defect in the

13  proceeding, the Court turns to the issue of prejudice.

14           The prejudice prong is satisfied when the alien demonstrates "plausible

15  grounds for relief which might have been available to him but for the deprivation of rights."

16  *Zarate-Martinez*, 133 F.3d at 1198 (citation omitted). As stated above, § 212(c) relief may

17  have been available to the Defendant at the time of his deportation hearing. The question then

18  is whether it was plausible that § 212(c) relief would have been granted.

19

20

---

21      [3]Although the AUSA did **not** argue this factor as a basis for denying the motion to

22  dismiss, the Court finds that the deportation proceedings are not saved by the IJ's bare

23  statement that "he provided the respondent with the opportunity for an evidentiary hearing

24  to explore any issue of "reliance" (?) on the availability of Section 212(c) relief . . . ." This

25  statement is a nullity in light of the fact that the IJ thereafter informed the Defendant in no

26  uncertain terms that he would not be eligible for § 212(c) relief.

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS INDICTMENT - 6

The Defendant worked as an agricultural worker for several years as a lawful permanent resident.  The Defendant also submitted two declarations which establish that he has an Aunt, Alva Fernandez-Linos, and a Cousin, Edith Fernandez, who are lawful permanent residents.  The Defendant assisted his Aunt with financial support during the period of his lawful residency and transported his Cousin, Edith Fernandez, to school.  "[Family ties], residence of long duration in this country, hardship to the alien and family if deported, history of employment, property or business ties, community service, and, when there is a criminal record, genuine rehabilitation," are some of the factors which are considered in determining whether § 212(c) relief is appropriate.  *Kahn v. INS,* 36 F.3d 1412, 1413 (9th Cir. 1994).  The Defendant need not establish that it was likely that he would have avoided deportation, only that he had a *plausible* basis for relief.  *See Zarate-Martinez*, at 1198.  The Government did not attempt rebut the Defendant's evidence; instead, the sole argument it offered in briefing and at oral argument is that prejudice cannot result from the IJ's failure to inform the alien of discretionary relief.  Again, this argument is contrary to Ninth Circuit law.  *See e.g., Ubaldo-Figueroa*, 364 F.3d at 1051.  The Defendant has established that it was plausible that § 212(c) relief would have been granted; therefore, the prejudice prong is satisfied.

**C.  Alternative Argument: Defendant Not Convicted of Aggravated Felony.**  In the alternative, the Defendant argues that the IJ erred in determining that his conviction was for an aggravated felony.

The term "aggravated felony" in the immigration law includes, among other things, murder, rape, trafficking in a controlled substances, trafficking in firearms, as well as any "crime of violence" as defined in section 16 of Title 18 for which the term of imprisonment at least one year.  8 U.S.C. § 1101(a)(43).  In the matter *sub judice*, the IJ determined that the Defendant was removable because he was convicted of a crime of violence, which is defined by section 16 as:

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS INDICTMENT - 7

1

2
 (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

3

4
 (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

5
*Leocal v. Ashcroft*, 125 S.Ct. 377, 380 (2004)(quoting 18 U.S.C. § 16).

6
   In *Leocal*, the Supreme Court held that both subsections (a) and (b) of 18 U.S.C.

7
§ 16 require more than a *mens rea* of negligence in order for the conviction to qualify. *See*

8
*id.* at 382-83; see also *See Lara-Cazares v. Gonzalez*, 408 F.3d 1217, 1219 (9th Cir.

9
2005)(gross vehicular manslaughter while intoxicated under California law is not a crime of

10
violence under the immigration law because the required *mens rea* is gross negligence).

11
   For Defendant's Washington state conviction for vehicular homicide, the statute

12
of conviction provides:

13

14

15
 When the death of any person ensues within three years as a proximate result of injury proximately caused by the driving of any vehicle by any person, the driver is guilty of vehicular homicide if the driver was operating a motor vehicle: (a) While under the influence of intoxicating liquor or any drug, as defined by RCW 46.61.502; **or** (b) In a reckless manner . . . .

16
R.C.W. 49.61.520(1)(a)-(b)(emphasis added). As discussed above, the Defendant's statement

17
on plea of guilty was as follows: "On or about the 4th of February, 1993 in Adams County,

18
Washington, at the corner of SR 24 and Bench road I did not see the stop sign, drove into the

19
intersection and the car I was driving collided with another car. As a result of the collision

20
Socorro C. Soto died. At the time I was under the influence of alcohol, Blood Alcohol .16."

21
   The Washington statute that the Defendant was charged with violating does not

22
**require** recklessness in order for a person to be convicted, i.e., it is over-broad under the

23
*Taylor* categorical analysis because the Defendant could have been convicted on a showing

24
of mere negligence. *See Taylor v. United States*, 495 U.S. 575 (1990). Moreover, the

25
Defendant's statement on guilty plea actually supports that he was convicted under subsection

26
(a), which is vehicular homicide committed while under the influence of intoxicating liquor.

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS INDICTMENT - 8

1  Regardless, even if the conviction was based on recklessness, nothing in the documents that

2  the Court may review for the modified categorical approach supports a finding that the

3  defendant was, in fact, based on the recklessness prong of R.C.W. 49.61.520(1)**(b)**.  *See*

4  *United States v. Kelly*, 422 F.3d 889, 895 (9th Cir. 2005)("Under the modified categorical

5  approach, the government has the burden to establish clearly and unequivocally the conviction

6  was based on all of the elements of a qualifying predicate offense.")(internal quotation marks

7  and citation omitted).  Therefore, the Defendant's conviction, which could have been based

8  on a *mens rea* of less than recklessness, does not qualify as a crime of violence under the

9  immigration law.  *See Lara-Cazares*, 408 F.3d at 1219.

## III.  CONCLUSION

11        The Defendant has demonstrated that his due process rights were violated by defects

12  in his underlying deportation proceeding and that he suffered prejudice as a result.  The July

13  20, 2001 deportation cannot serve as a predicate element for the illegal reentry offense under

14  8 U.S.C. § 1326.  Accordingly,

15        **IT IS ORDERED** that:

16        1.   The Defendant's Motion to Dismiss the Indictment, **Ct. Rec. 23**, is **GRANTED**.

17        2.   The Indictment is **DISMISSED** without prejudice.

18        The District Court Executive is directed to file this Order and provide copies to counsel.

19        **DATED** this 10th day of November, 2005.

21                                        s/ Wm. Fremming Nielsen
                                          WM. FREMMING NIELSEN
22  11-10                          SENIOR UNITED STATED DISTRICT JUDGE

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS INDICTMENT - 9